IRVING, J.,
 

 for the Court.
 

 ¶ 1. Claudine Brown (Brown), adminis-tratrix of the Estate of Charles Brown, appeals from the judgment of the Yazoo County Circuit Court granting Progressive Gulf Insurance Company’s (Progressive) motion for summary judgment and denying hers. Brown asserts that the circuit court erred in finding that an insurance policy issued by Progressive to S & S Trucking, Inc. (S & S Trucking), with Scott Penn, Inc. (Scott Penn) named as an additional insured, did not provide any coverage for her decedent, Charles Brown.
 
 [1]
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Charles and Jessie Woods
 
 [2]
 
 were killed on November 8, 2005, when the tractor-trailers that they were driving collided. At the time of the accident, Woods was an employee of Alma Frances McLean (Frances) and was driving a tractor-trailer that she owned. Frances’s husband, Henry McLean, operated a logging business, and the truck that Woods was driving was used in that business, although neither Frances nor Henry had liability insurance on the truck. As part of the business operation, Henry produced and hauled wood for Scott Penn. Scott Penn had an arrangement to sell wood to International Paper Company (International Paper) pursuant to a Master Wood Purchase and Service Agreement.
 
 [3]
 

 
 *357
 
 ¶ 4. The agreement reads, in pertinent part, as follows:
 

 [Scott Penn] undertakes and agrees to sell, deliver, cut, controvert, and/or transport to [International Paper] or other designated destinations, and [International Paper] undertakes and agrees to purchase and/or accept from [Scott Penn], those certain quantities of pulpwood, saw timber, in-wood chips, residual chips, chip mill chips, fiber fuel, poles, pulling or other forest products. ...
 

 The agreement also provides as follows: “[w]hen [Scott Penn] is transporting [w]ood, pursuant to this Agreement, [Scott Penn] agrees to furnish a sufficient number of safe and operationally sound tractors, trailers, and other transportation equipment of sufficient capacity, together with licensed, and insured, competent drivers.” Further, as it relates to insurance, the agreement states in pertinent part:
 

 Insurance:
 
 [Scott Penn] shall carry, with insurers satisfactory to [International Paper], during the term hereof, Auto Liability Insurance, including either “owned, hired and non-owned vehicles” or “hired, non-owned and scheduled vehicles,” with limits of not less than $1,000,000, combined single limit, for both bodily injury liability and property damage liability each occurrence .... Prior to commencing operations hereunder, a Certificate of Insurance evidencing such coverage, satisfactory to [International Paper], shall be furnished to [International Paper], which shall specifically state that such insurance shall provide for at least ten (10) days’ notice to [International Paper] in the event or cancellation or any material change in such insurance policies.
 

 ¶ 5. To meet its insurance obligations under the agreement, Scott Penn purchased an insurance policy from Ed Sanford Insurance Agency (Ed Sanford), an agent for Progressive. Christine Somrak, manager of administrative claims support for Progressive, testified by deposition that Ed Sanford did not request coverage for hired and non-owned vehicles in the application that it submitted for Scott Penn. Somrak further testified that the policy issued by Progressive, which was for the period of April 4, 2005, to April 4, 2006, did not contain hired and non-owned vehicle endorsements.
 
 [4]
 
 Additionally, neither Woods nor the truck that he was driving at the time of the accident was listed on any of Scott Penn’s insurance policies with Progressive.
 
 [5]
 
 Nevertheless, Ed Sanford issued two certificates of liability insurance to International Paper, one to International Paper’s Vicksburg, Mississippi facility and the other to its Canton, Mississippi facility. Both of the certificates indicated that “hired” and “non-owned” vehicles were covered by the policy.
 
 [6]
 
 Somrak testified that Ed Sanford had
 
 *358
 
 no authority to issue the certificates and that Progressive was not aware that the certificates had been issued by Ed Sanford.
 

 ¶ 6. On December 6, 2005, Brown filed a wrongful death action, individually, and on behalf of Charles’s beneficiaries. Brown sought damages for Charles’s death based on her assertion that Woods negligently caused the accident by driving his tractor-trailer into the southbound lane and colliding head-on with the tractor-trailer being driven by Charles.
 
 [7]
 
 After several amendments, the complaint finally listed the following defendants: Frances, the Estate of Jessie Woods, Progressive, and Scott Penn. In the complaint, Brown alleges that Frances and Scott Penn are liable for Woods’s negligence under the doctrine of respondeat superior.
 
 [8]
 
 She sought a declaratory judgment that “[the] [Progressive] automobile liability insurance policies ... which named [Scott Penn] as an additional named insured, provided automobile liability insurance indemnity to [Scott Penn], Frances McLean and Jessie Woods, Deceased as ‘insureds’ under said policy for the wreck in question.”
 

 ¶ 7. Ail defendants responded by filing their separate answers in which they generally denied the material allegations of the complaint and asserted affirmative defenses. Progressive and Scott Penn later filed motions for summary judgment. Brown also filed a motion for summary judgment, contending that no genuine issue of material fact existed as to whether file tractor-trailer that she owned, which Woods was driving at the time of the accident, was covered by the policy issued to S
 
 &
 
 S Trucking for the benefit of Scott Penn.
 

 ¶ 8. The circuit court denied Brown’s motion for summary judgment, granted Scott Penn’s motion, and dismissed the action against Scott Penn with prejudice, finding that “Defendant Scott Penn, Inc., has no liability to Plaintiff for the accident and/or death at issue.” The circuit court also granted Progressive’s motion, dismissing all of Brown’s claims against it. The circuit court found that no genuine issue of material fact exists as to either Brown’s claims of coverage under the policy issued to S & S Trucking or to Progressive’s claim of non-coverage. The court then entered a judgment in favor of Progressive pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure. It is from this judgment that Brown now appeals.
 

 ¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
 

 ANALYSIS AND DISCUSSION OF THE ISSUE
 

 ¶ 10. Our standard of review as it relates to summary judgment is well settled:
 

 [An appellate court] conducts de novo review of orders granting or denying summary judgment and examines all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The
 
 *359
 
 evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.
 
 McCullough v. Cook,
 
 679 So.2d 627, 630 (Miss.1996).
 

 Henderson v. Un-Named Emergency Room,
 
 758 So.2d 422, 424(¶ 7) (Miss.2000).
 

 ¶ 11. Brown’s core argument is that the policy issued to S & S Trucking covered hired and non-owned vehicles and that the vehicle that was owned by Frances and driven by Woods at the time of the accident qualifies as either a hired or non-owned vehicle, subject to coverage under the policy. In support of her argument, Brown relies on three things: (1) the certificates of liability insurance issued by Ed Sanford to S & S Trucking indicating that hired and non-owned vehicles were covered under the policy for the period of April 4, 2005, to April 4, 2006; (2) a letter from Progressive to S & S Trucking, dated March 14, 2006, acknowledging the loss that occurred on November 8, 2005, involving Woods, an unlisted operator, and advising that it had added Woods to the policy and assessed a surcharge for the accident; and (3) a renewal declarations page for the policy in question, listing Woods as a rated driver for the renewal period: April 4, 2006, to April 4, 2007.
 

 ¶ 12. Before we begin our analysis, we make a few pertinent observations and recount some relevant undisputed facts. First, as we have already noted, there is a disclaimer on the face of each of the certificates of liability upon which Brown relies. The disclaimer clearly states: “This certificate is issued as a matter of information only and confers no rights upon the certificate holder. The certificate does not
 
 amend, extend or alter the coverage afforded by the [policy]....”
 
 Second, the March 14, 2006, letter is silent as to retro-activity. Third, notwithstanding the renewal declarations page that was sent to Scott Penn, Scott Penn did not renew the policy that added Woods as an insured driver. Fourth, it is not disputed that Ed Sanford was an agent for Progressive and that he had the apparent authority to issue the certificates. Fifth, Woods was not, and had never been, an employee of Scott Penn. Sixth, at the time of the accident, Scott Penn was not leasing or renting the vehicle that Woods was driving. Seventh, the policy issued by Progressive does not contain a hired vehicle endorsement. Eighth, Scott Penn was dismissed from the lawsuit, and International Paper was never made a party to the lawsuit. Mindful of these observations and undisputed facts, we now address Brown’s contention that the circuit court erred in denying her motion for summary judgment and granting Progressive’s.
 

 ¶ 13. We first observe that if it were International Paper making a claim for indemnification against Scott Penn or Scott Penn making a claim for coverage, our decision would be more difficult. This is because Scott Penn paid the policy premium and is listed as an additional insured on the policy and the certificates of liability insurance in question were issued to facilitate Scott Penn’s ability to conduct business with International Paper and to protect International Paper from this type of damage claim. However, resolution of this case does not require that we delve into this issue, so we will not engage in dicta.
 

 ¶ 14. As stated, Brown contends that coverage is extended to her decedent un
 
 *360
 
 der the policy because of (1) the certificates of liability insurance issued by Ed Sanford to S & S Trucking indicating that hired and non-owned vehicles were covered under the policy for the period of April 4, 2005, to April 4, 2006; (2) a letter from Progressive to S & S Trucking, dated March 14, 2006, acknowledging the loss that occurred on November 8, 2005, involving Woods, an unlisted operator, and advising that it had added Woods to the policy and assessed a surcharge for the accident; and (3) a renewal declarations page for the policy in question, listing Woods as a rated driver for the renewal period: April 4, 2006, to April 4, 2007.
 

 ¶ 15. We find that Brown’s reliance is misplaced. First, Somrak stated in her deposition that Ed Sanford did not request coverage for hired and non-owned vehicles in the application that he submitted on behalf of Scott Penn, and no such coverage was provided in the policy that was submitted pursuant to the application. Second, it is clear from the face of the certificates of liability insurance that Ed Sanford issued that they do not expand the coverage afforded under the policy because they are not endorsements. Rather, they are intended merely as an explanation of coverage, even though in this instance, they misstated the scope of the coverage. Nevertheless, even if we were to accept that the certificates of liability insurance bound coverage, Brown still cannot prevail. We explain.
 

 ¶ 16. Chris Scullin, a commercial automobile casualty manager at Progressive, testified via deposition that although the certificates show coverage for hired and non-owned autos, it is Progressive’s position that the vehicle that was driven by Woods does not qualify as an insured vehicle under the definition of a non-owned auto, as defined in the policy, or as a hired vehicle as defined in Progressive’s hired auto endorsement. We have carefully examined the definition of non-owned auto that is contained in the policy and the definition of hired auto as provided in the specimen hired-vehicle endorsement. We agree with Progressive.
 

 ¶ 17. The hired vehicle endorsement defines a hired auto as “an auto which is not owned by [Progressive], registered in [Progressive’s] name, or borrowed from [Progressive’s] employees and which is obtained under a short-term rental agreement not to exceed thirty (30) days.” Clearly, the vehicle driven by Woods is not covered by this definition. Therefore, there is no need for further discussion of the “hired auto” provision as it relates to coverage. We look now to see whether coverage is provided under the provision for non-owned auto. The policy defines a non-owned auto as follows:
 

 “Non-owned auto” means any auto which is:
 

 a. not owned by or registered to you, your nonresident spouse or a resident of the household in which you reside;
 

 b. not hired, owned by or borrowed from your employees or members of their households; or
 

 c. Not hired by you or an employee of yours, and if you are a person, not hired by a resident of the household in which you reside unless it is specifically listed on the policy Declarations.
 

 Clearly the vehicle driven by Woods fits within the description of a non-owned auto. However, this is not the end of the discussion, as the policy contains the following rider:
 

 EMPLOYERS NON-OWNERSHIP LIABILITY
 

 We agree with you that the insurance provided under the Bodily Injury and Property Damage Coverages of the Pol
 
 *361
 
 icy for your insured auto applies to any non-owned auto used in your business by any of your employees, subject to the following provisions:
 

 1. Insureds. The “insured” provisions under the Bodily Injury and Property Damage Coverages apply to the insurance provided by this endorsement except that none of the following is an insured with respect to a non-owned auto:
 

 a. the owner of a non-owned auto and any agent or employee of that owner.
 

 b. an executive officer of yours with respect to an auto owned by him or a member of his household.
 

 ¶ 18. It is unquestionably clear that, although the vehicle which was involved in the accident in question is a non-owned auto as defined in Scott Penn’s policy, coverage for the vehicle is excluded by the policy because it was owned by Frances and driven by her employee. The non-ownership liability rider specifically provides that the owner of a non-owned auto and the employee of the owner, with respect to the bodily injury and property damage provisions of the policy, are not insureds as that term is defined in the policy.
 

 ¶ 19. We next address Brown’s contention that the renewal declarations page of the proposed renewal policy and the letter that Progressive sent to Ed Sanford and S & S Trucking raise genuine issues of material fact regarding insurance coverage for Frances’s vehicle that was involved in the accident. We find that there are several reasons why these two facts are not material to the question of whether coverage existed on Frances’s vehicle on the date of the accident. First, as noted, the renewal declarations page that Brown references is for a policy that was set to commence five months after the occurrence of the accident in question. Second, the policy was not renewed. It is true, as Brown argues, that the declarations page lists Woods as a rated driver. However, the policy that was in force on the date of the accident does not list Woods as a rated driver. When the renewal declarations page was prepared on March 15, 2006, it is clear that Progressive was not aware that Woods was deceased because it listed him as a rated driver for a policy period to begin on April 4, 2006, and end on April 4, 2007.
 
 [9]
 
 The fact that Woods was listed prospectively does not mean that he was covered retroactively, as Brown contends. The question regarding retroactivity brings the discussion to the letter, dated March 14, 2006, that was sent by Progressive to S & S Trucking. The letter reads, in pertinent part, as follows:
 

 A loss occurred on the above referenced policy on 11/08/05. Our investigation revealed that the driver at the time of [the] loss was Jesse Woods, an unlisted operator. We have added this driver to the policy along with a surcharge for the accident.
 

 ¶ 20. Somrak testified that Progressive did not extend coverage to Woods for the accident and that he was added by a customer service representative when the policy came up for renewal. Somrak explained as follows: “The policy was coming up for renewal at this time and that is when our customer service [representative] reviews the policy and noted that there was a loss and there was a loss with an unlisted driver and they were adding him going forward.” Somrak further explained that the customer sendee representative did not know that Woods was deceased. As for Brown’s contention that
 
 *362
 
 Woods was added to the policy retroactively, Somrak was asked the following question: “Okay. Now, before this customer service department issued document 1619, that’s the document where — -I’m sorry, 1609, that’s the document where Jesse Woods was added to the policy retroactively for the accident in question?” Somrak responded, “He was not added retroactively.” There is nothing ambiguous about the letter regarding the effective date of coverage for Woods. While the letter stated that a loss had occurred on the policy and that a surcharge had been added, this language merely indicates that a claim had been made against the policy as a result of an accident by an unlisted driver. In no way does this language raise a material issue regarding coverage at the time of the accident.
 

 ¶ 21. Lastly, Brown has cited several cases that speak to the issue of the proper treatment of ambiguous contracts. We see no need to discuss the holding in any of those cases because we see nothing ambiguous about the policy provisions in question. Additionally, Brown also has cited cases from another jurisdiction which construe the phrases “hired auto” and “non-owned auto” in policies that provide bodily injury and property damage to persons engaging in logging operations. It is sufficient to say that we have examined each of those cases and find that they are easily distinguishable in that they do not contain the employer’s non-ownership liability rider as does the policy in the case before us.
 

 ¶ 22. In conclusion, we find that the circuit court did not err in finding that no genuine issue of material fact exists with respect to whether Frances or her employee, Woods, are covered under the policy issued to S & S Trucking with Scott Penn listed as an additional insured. We further find that the circuit court did not err in finding that the policy issued to S & S Trucking provides no coverage for Frances or Woods. Therefore, we affirm the judgment of the circuit court granting summary judgment in favor of Progressive and denying Brown’s motion for summary judgment.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON and MAXWELL, JJ., concur. LEE, P.J., Not Participating.
 

 [1]
 

 .Hugh Scott Perm, owner of Scott Penn, testified that S & S Trucking was one of several entities created by Sanford Insurance Agency to avoid putting too many trucks on a single insurance policy because there was a limit on the number of trucks that Progressive would insure on a single policy. The S & S Trucking policy named Scott Tenn, Inc. rather than Scott Penn as an additional insured. However, all parties agree that the intended additional insured was Scott Penn, and there is no allegation that Scott Penn was not covered under the S
 
 &
 
 S Trucking policy.
 

 [2]
 

 . Although Woods’s first name is spelled throughout the pleadings as "Jessie,” the insurance documents and the witnesses for Progressive, which will be discussed later, have his first name listed as "Jesse.” We have chosen to leave the spelling as indicated.
 

 [3]
 

 . The accident occurred shortly after Woods had delivered a load of wood to International Paper’s facility in Redwood, Mississippi. Hugh testified at a deposition that there was no written contract between Henry and Scott Penn.
 

 [4]
 

 . A copy of the form commercial vehicle policy, along with the policy declarations page, that was issued to S & S Trucking was attached to Progressive’s motion for summary judgment. Neither the form policy nor any of its endorsements provided coverage for hired vehicles.
 

 [5]
 

 . At the time of the accident, Progressive insured a number of commercial vehicles specified on several policies of insurance that listed Scott Penn as an additional insured.
 

 [6]
 

 .Although the certificates indicate that coverage was in place for hired and non-owned vehicles, it should be noted that the face of each certificate bears the following disclaimer: “This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage provided by the polices below.”
 

 [7]
 

 . Prior to the filing of the lawsuit, neither Scott Penn nor Frances had reported the accident to Progressive. The record reflects that Brown’s attorney notified Progressive about the accident on or about February 15, 2006, which was more than three months after the accident.
 

 [8]
 

 . Brown alleged that the McLeans and Scott Penn were involved in a joint venture to produce wood for International Paper. Later, in a memorandum in support of her motion for summary judgment, Brown abandoned her joint venture argument and stated that "[Scott Penn] is not needed to reach the liability insurance coverage [issue], [since] there is no need to prove agency or joint venture. [Scott Penn's] Motion for Summary Judgment is confessed as to those issues.”
 

 [9]
 

 . As already noted. Woods was killed in the accident on November 8, 2005.